Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5782 | **DATE** | 7/15/2004 |
| **CASE TITLE** | Czarnowski Display Services, Inc. vs. Bell | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative, Motion to Transfer Venue

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction, brought pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), or in the Alternative, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Defendant's motion to dismiss is denied. Defendant's motion to transfer venue is granted. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 1 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CZARNOWSKI DISPLAY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES BELL, <br><br> Defendant. | No. 03 C 5782 <br> Honorable Charles R. Norgle |

## OPINION AND ORDER

**CHARLES R. NORGLE, District Judge.**

Plaintiff, Czarnowski Display Services, Inc. (hereinafter "CDS" or "Company") filed a six-count complaint that was later amended to contain only three-counts against Defendant, James Bell (hereinafter "Bell"), alleging breach of contract, breach of fiduciary duty and tortious interference with contractual relations. Now before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction, brought pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), or in the alternative, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

CDS is an Illinois Corporation with its principal place of business in Chicago, Illinois. Bell is a California citizen. The amount in controversy exceeds $75,000. The court, therefore, has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2). For the following reasons, Defendant's Motion is granted in part and denied in part.

# I. BACKGROUND[1]

CDS is an Illinois Corporation with its principal place of business in Chicago, Illinois. CDS operates its business in various cities around the United States providing exhibit display services, including, but not limited to, installing and dismantling exhibits. It also provides rentals, graphics, shipping, storage and refurbishing services. CDS employs City Managers at its various locations. All City Managers report to and are accountable to the President of CDS, Mark Nagle, whose office is located at the Company's headquarters in Chicago, Illinois.

Bell is a California citizen. He was employed as City Manager of CDS's Los Angeles office and later as Vice President of the Company. As part of his responsibilities, Bell attended two managers' meetings in Chicago, Illinois. He also traveled to Illinois four additional times to consult with two Illinois-based clients regarding projects in California. He made four sales calls to residents in Illinois and attended one trade show in Illinois. Bell received $110,000 per year as compensation and additional benefits from CDS until his termination on January 30, 2002. Bell received his paycheck every other week from the corporate office in Chicago, Illinois and he cashed the checks which were drawn from an Illinois bank account.

Before CDS hired Bell as City Manager of its Los Angeles office, Bell was the President and Owner of Universal Exposition Services (hereinafter called "Universal"), a company that was a competitor of CDS. In March 1996, Universal sold all its assets to CDS for $200,000 through an Asset Purchase Agreement. Around the same time, Bell entered into a Non-Compete Agreement

---

[1]The background information is taken from parties' pleadings, including attached affidavits. The Court accepts as true all uncontested facts, see, e.g., Saylor Dyniewski, 836 F.2d 341, 342 (7th Cir. 1998), but where the facts are in dispute, the Court accepts Plaintiff's version. See, e.g., Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

for $300,000. CDS paid Bell $50,000 by check and executed a Promissory Note of $250,000 for the Non-Compete Agreement, which CDS paid in full. CDS's payments of $500,000 to Universal for entering into the Asset Purchase Agreement and the Non-Compete Agreement (collectively "Agreements") were paid from checks from the corporate office in Chicago, and the money was drawn from an Illinois bank account. The Agreements contain the Non-Compete Agreement, which states in relevant part:

> 1. **Covenant Not to Compete.** Covenator and CDS acknowledge that CDS intends to continue the operation of the Business in the same manner as such has been operated by Covenator, by and through Universal Exposition Services, Inc. In consideration of the payment of the Fee, in the amount and upon the terms set forth below, Covenantor agrees that it shall not (a) establish or be employed or affiliated with any business involving the exhibit and display service for trade shows and conventions with the exception of employment or assistance with CDS; nor (b) directly solicit, by any means or in any manner, any past or current clients/customers of the Business, either himself or through any employee, agent, affiliate or any other person or entity. Covenator's covenant, as provided herein, shall be in effect for a period of five (5) years from the date hereof and shall prohibit any such actions by Covenantor within the geographic boundaries of the United States of America, including the States of Alaska and Hawaii. Covenator agrees that it shall not conduct any business under the trade name "CDS". Buyer shall have the right to enforce the provisions of this Covenant by all remedies available at law or in equity, including without limitation, by injunctive relief.
>
> 3. **Scope and Duration of Covenant.** Covenantor hereby expressly agrees that the geographic scope and duration of the Covenant is fair and reasonable, and warrants that it shall not interpose any claim of unreasonableness as a defense to the enforcement of the Covenant.
>
> 8. **Miscellaneous.** The laws of the State of California shall govern the validity, construction, performance and effect of this Agreement.

The Agreements were entered into in Las Vegas, Nevada. The preceding negotiations took place between Bell and CDS's officers and attorney by written correspondence and telephone from the corporate office in Chicago, Illinois.

3

During the course of his six-year employment with CDS, Bell allegedly used CDS's credit card and checks to purchase personal items. Bell submitted his expense reports and misrepresented to CDS that the charges for the airline tickets, meals, merchandise and gasoline were business-related when they were for personal use and for his girlfriend, Robin Brown.

CDS further alleges that during the course of his employment, Bell used CDS's materials and performed services for one of CDS's customers, Anglers Marine, but failed to invoice the customer for the full amount of the materials and services. Subsequently, Bell received a boat from the Anglers Marine. Additionally, Bell sent out invoices for the work to the customer in his name and not the company's name, and faxed incomplete invoices to the Chicago office. As a result of Bell's alleged actions, CDS lost revenue for services rendered, as well as profits stemming from those services.

On August 18, 2003, CDS filed the present lawsuit. On October 10, 2003, Plaintiff filed a six-count First Amended Complaint. On November 7, 2003, Bell filed a Motion to Dismiss for lack of personal jurisdiction over the Defendant or alternatively, a Motion to Transfer Venue. On December 15, 2003, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss or Transfer and amended the complaint to three-counts alleging defendant's breach of contract, breach of fiduciary duty and tortious interference with contractual relations. Defendant's Motion to Dismiss or Transfer Venue is fully briefed and before the court.

## II. STANDARD OF REVIEW

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1995)). "In deciding

4

a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties." Glass v. Kemper Corp., 930 F. Supp. 332, 337 (N.D. Ill. 1996) (citing Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)). "The court resolves factual disputes in the pleadings and affidavits in favor of the plaintiff, but takes as true facts contained in the defendant's affidavit that remain unrefuted by the plaintiff." Id. (citing Nelson v. Park Industries, Inc. 717 F.2d 1120, 1123 (7th Cir. 1983)).

### III. DISCUSSION

*A. Personal Jurisdiction*

A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident "only if a court of the state in which it sits would have jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003). To determine personal jurisdiction, the court conducts a two-part inquiry: 1) whether the state's long-arm statute permits jurisdiction; and 2) whether the assertion of jurisdiction complies with constitutional due process standards. See Wilson v. Humphreys (Cayman) Ltd., 916 F.2d 1239, 1243 (7th Cir. 1990).

*1. Illinois Long-Arm Statute*

The Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2-209(a), states in relevant part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: . . . (2) The commission of a tortious act within this State; or . . . (7) The making or performance of any contract or promise substantially connected with this State; or . . . (11) The breach of any fiduciary duty within this State.

For purposes of the Illinois long-arm statute, the Illinois courts construe the phrase "tortious act" broadly to encompass any act that involves a breach of a duty owed to another and makes the person

5

committing the act liable to the other for damages. See, e.g., Grand Vehicle Works Holdings, Corporation v. Frey, No. 03 C 7948, 2004 U.S. Dist LEXIS 5732, at 1, 15 (N.D. Ill. 2004).

The facts in this case indicate Bell's conduct falls within the Illinois long-arm statute. First, CDS alleges Bell breached the Agreements, which were substantially connected to Illinois. Bell negotiated the Agreements by written correspondence and telephone with CDS's President and Controller on numerous occasions in Chicago, Illinois. The making and performance of the Agreements are substantially connected with the State in that Bell's employment with the Company, headquartered in Illinois, was contingent upon entering into the Agreements and performing his managerial responsibilities as City Manager of the Los Angeles office. See 735 Ill. Comp. Stat. 5/2-209(a)(7). Second, CDS alleges Bell breached his fiduciary duty as City Manager with the company when he used the Company credit card to buy personal items for himself and his girlfriend, and used Company checks to pay off the bills. He then submitted expense reports to the corporate office in Chicago, Illinois and requested reimbursement for his personal use. See 735 Ill. Comp. Stat. 5/2-209(a)(11). Finally, CDS alleges Bell committed a tortious act when he submitted some of the invoices to the Chicago office representing misleading information. See 735 Ill. Comp. Stat. 5/2-209(a)(2), see also FMC Corp v. Varonos, 892 F.2d at 1313 (1990) (holding defendant is subject to jurisdiction under section 2-209(a)(2) of the long arm statute for tortious activities committed in Illinois when defendant sent misleading telexes and telecopied reports to Illinois in furtherance of her scheme to defraud an Illinois corporation.) Therefore, Bell's alleged conduct falls within the enumerated bases of the Illinois long-arm statute.

## 2. *Constitutional Limits on Personal Jurisdiction*

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal

jurisdiction over nonresident individuals and corporations. See RAR, 107 F.2d at 1277 (citing Pennoyer v. Neff, 95 U.S.714, 733 (1878)). To satisfy the requirements of federal due process, a nonresident defendant must have established sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See id. at 1277. To establish such "minimum contacts. . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In determining whether sufficient "minimum contacts" exist, courts consider whether a defendant could "reasonably anticipate being haled into court in that forum." World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980). This requirement is satisfied when the defendant intentionally directs his activities at forum state residents and the litigation arises from injuries allegedly caused by those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

The United States Supreme Court has divided the "minimum contacts inquiry into two distinct categories: general jurisdiction and specific jurisdiction. See Hyatt International Corp., 302 F.3d 707, 713 (7th Cir. 2001)(citing Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn. 8,9 (1958)). A court has general jurisdiction over a nonresident defendant only when the defendant has "continuous and systematic general business contacts" with the forum. See Purdue Research Foundation, 338 F.3d at 787 (quoting Helicopteros Nacionales de Colombia, S.A, 466 U.S. at 416). If the court finds that such contacts exist, it may exercise personal jurisdiction over the defendant even if the action does not arise out of or is not related to the defendant's contacts with the forum. See Hyatt International Corp., 302 F.3d at 713. Specific jurisdiction, on the other hand, "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant in a suit arising out of or related to

the defendant's contacts with the forum.'" See RAR Inc., 107 F.3d at 1277 (quoting Helicopteros Nacionales de Colombia, 466 U.S. at 414 n.8).

### *a. General Jurisdiction*

For general jurisdiction, the contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." International Shoe Co. v. Washington, 326 U.S. 310, 318 (1945). In this case, CDS claims that general jurisdiction exists based on Bell's management position with the company. As a City Manager, Bell regularly communicated with managers and employees in CDS's corporate office in Chicago and attended managers' meetings there. His physical contacts with Illinois include attending two managers' meetings and attending one trade show. He also traveled to the state four times to meet clients concerning projects in California. CDS argues that his presence in Illinois for these meetings and his frequent conversations with employees at the headquarters constitute continuous and systematic business contacts in Illinois. However, Bell's primary duties with the Company were to oversee CDS's California operations and his contacts and communications with Illinois in furtherance of his California duties are "sporadic"and therefore insufficient to warrant general jurisdiction. See Glass, 930 F. Supp. at 339( holding no general jurisdiction where nonresident defendant came to Illinois once to interview; once for week-long job orientation; and several times per year to attend board meetings.)

### *b. Specific Jurisdiction*

Contrary to general jurisdiction, specific jurisdiction may be found as long as the defendant's efforts are purposefully directed toward residents of another State and the litigation arises from injuries allegedly caused by those activities. See Burger King, 471 U.S. at 474, 476. The Supreme Court has consistently rejected the notion that "an absence of physical contacts can defeat personal jurisdiction."

Id. at 476. In specific jurisdiction cases, the court must decide whether a defendant has "purposefully established minimum contacts within the forum state" and consider whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. See id. at 476-77. This requires a showing that the defendant could have anticipated being haled into the courts of the state as a result of its contacts with the forum. See id.; see also World-Wide Volkswagen, 444 U.S. at 297. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Purdue Research Foundation, 338 F.3d at 787. To ensure that jurisdiction is not based on fortuitous contacts, there must be at least some showing that the defendant purposefully availed himself of the privileges of conducting activities within the forum state. See id. So long as it creates a "substantial connection with the forum, even a single act can support jurisdiction." McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957).

*1. Count I - Breach of Contract*

CDS alleges that Bell breached the Agreements when Bell sent out invoices for work he performed for a customer in his own name and not the company's name, which was a direct violation of sections 1(a) and (b) of the Non-Compete Agreement. Bell used CDS's materials and performed services for one of CDS's customers, Anglers Marine, but allegedly failed to invoice the customer for the full amount of the materials and services. In addition, Bell allegedly faxed incomplete invoices to the Chicago office. In response, Bell argues that the performance of the contract was not substantially connected to Illinois because the Agreements were entered into in Las Vegas, Nevada and are governed by California or Nevada law. Bell further contends that Illinois is not even mentioned in any of the Agreements and therefore he should not be subject to personal jurisdiction in Illinois.

The United States Supreme Court emphasized in Burger King that a "realistic approach" is

required when analyzing jurisdiction based on contract analysis. Burger King, 471 U.S. at 479. A "contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Id. The courts consider a number of factors to determine whether a nonresident defendant is subject to personal jurisdiction based on a contract. Factors that are relevant include: "who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract." MAC Funding Corp. v. Northeast Impressions, Inc., 215 F. Supp. 2d 978, 981 (N.D. Ill., 2002.) Although an out-of-state party's contract with an in-state party alone is not enough to establish requisite minimum contacts, the "parties' prior negotiations and contemplated future consequences, along with the terms of the Agreements and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." Burger King, 471 U.S. at 479.

Bell's position as City Manager of the Los Angeles office was contingent upon Bell's acceptance of the Non-Compete Agreements. Clearly, CDS was concerned that Bell had the potential to injure the Company since Bell was a business competitor. Bell's "prior negotiations and contemplated future consequences" indicate that Bell purposefully availed himself of the forum. Bell was aware that the Agreements specifically stated that he would not interfere with the Company's business clients. However, after Bell conducted negotiations with CDS, by telephone and written correspondence, to sell the assets of his company and to be employed by CDS, he allegedly sent invoices in his name and not the Company's name to CDS's customer. This alleged breach of the Agreements, which injured CDS, cannot be viewed as "random, fortuitous, or attenuated." Burger King 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, (1984)). It was

foreseeable that Bell's alleged conduct of invoicing the customer in his own name and not the company's name and subsequently faxing the invoices to CDS would subject him to being "haled into court in the forum." World-Wide Volkswagen, 444 U.S. at 297. Therefore, based on the "realistic approach" as set forth in Burger King, Bell's alleged breach of the Agreements which was substantially connected to Illinois and which is the subject of this litigation is sufficient to subject Bell to personal jurisdiction within the state of Illinois. See Burger King 471 U.S. at 479.

*2. Count II - Breach of Fiduciary Duty*

Additionally, CDS claims that Bell breached his fiduciary duty by intentionally communicating material misrepresentations to employees in the corporate office in Illinois regarding his expense report. Specifically, CDS alleges Bell represented to those in the corporate office in Illinois that his use of the Company credit card for airline tickets, meals, merchandise, and gasoline were business-related when they were for his personal use and for his girlfriend, Robin Brown. However, Bell argues that he physically submitted the expense reports to the office manager in the Los Angeles office and therefore committed no physical act in relation to the forum.

CDS correctly cites FMC Corp. v. Varonos, in support of its argument. In FMC, the Seventh Circuit held that personal jurisdiction existed in Illinois over a citizen and resident of Greece who was the office manager for FMC's regional office in Greece because she sent communications that she knew to contain material misrepresentations to FMC's Chicago office. FMC v. Varonos, 892 F.2d at 1308. The Seventh Circuit held that communications to Illinois made through mails or by telephone, telex or telecopier in furtherance to defraud an Illinois Corporation is subject to jurisdiction under section 2-209(a)(2) of the long-arm statute for tortious activities committed in Illinois. Id. at 1313. The court further found due process, because Varonos reached out to FMC in Illinois through telexes and

11

telecopied reports that misrepresented the costs of operating FMC's Athens office. Id. The court concluded that Varonos should have foreseen that she could be required to answer for her actions in Illinois. Id.

The present case is similar to the case heard before the Seventh Circuit in FMC. Bell allegedly misrepresented to officers in the Illinois headquarters that the expenses listed in his expense report were business-related when they were not. Furthermore, Bell's conduct of submitting the expense reports to his office manager, knowing that these expense reports would be sent and viewed by employees in the headquarters, is sufficient conduct to show that Bell purposefully availed himself of the forum. Bell had "continuing obligations" between himself and residents of the forum. See Burger King, 471 U.S. at 475. As City Manager and later as Vice President of the Company, he had a duty to report to officers of the Company at the headquarters in Illinois. He was accountable to the President of the Company to act in the best interest of CDS. As a City Manager with "continuing obligations" with the Company, Bell established the "minimum contacts" required in order to be subject to Illinois jurisdiction when he allegedly failed to act in the best interest of CDS by misrepresenting his business expense report to the officers in Illinois.

### 3. Count III - Tortious Interference with Contractual Relations

Finally, CDS claims that Bell committed a tortious act within Illinois by sending communications that he knew contained material misrepresentations to CDS's corporate office in Chicago, Illinois. In his defense, Bell asserts that his communications to CDS employees in Chicago do not form the basis of any of its claims or give rise to any of its alleged damages. More specifically, Bell contends that the alleged wrongful act was Bell's purported performance of services for which he did not properly charge the customer which occurred in California, not mailing invoices to Chicago,

Illinois. However, Bell fails to recognize the alleged wrongful act encompasses both Bell's purported performance of services for which he did not properly charge the customer, sending invoices to the customer in his own name, and sending invoices to Chicago, Illinois, which did not properly represent the actual work performed and materials used. CDS's claims arise out of these material misrepresentations.

CDS also alleges that as a result of Bell's conduct, it lost revenue for services rendered as well as profits stemming from those services. In response, Bell contends that mere economic loss in Illinois due to wholly out-of state actions is not a sufficient basis for asserting jurisdiction over a nonresident defendant.

In support of his argument, Bell cites Turnock v. Cope. In Turnock, the Seventh Circuit held that an Illinois court does not acquire jurisdiction under the "last act" doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois. (Turnock v. Cope 816 F.2d 333, 335 (1987) ( interpreting Green v. Advance Ross Electronics Corp., 427 N.E.2d 1203, 1206 Ill. (1981)). In Turnock, the complaint alleged conspiracy, conversion of funds, interference with employment and unjust enrichment when the defendants allegedly retained his commissions. Id. at 334. However, the court found that all of the commission payments Turnock believed the defendants wrongfully took from him were drawn upon a bank account which was located in Michigan. Id. Therefore, the court concluded that any conspiracy, conversion of funds, interference with employment or unjust enrichment could not have taken place in Illinois. Id. In essence, all of defendant's conduct contributing to the injury occurred outside Illinois. Therefore, the Seventh Circuit determined that the long-arm statute did not apply because the allegations did not relate to the tortious acts but rather related only to plaintiff's contacts with Illinois. Id. at 335.

The court finds the facts in the present case are distinguishable from <u>Turnock</u> in several respects. First, CDS alleges three enumerated bases for the long arm statute: breach of contract, breach of fiduciary duty and tortious conduct within Illinois. See 735 Ill. Comp. Stat. 5/2-209(a)(2)(7)(11). Each count is based on Defendant's conduct within Illinois and not Plaintiff's conduct within Illinois as in <u>Turnock</u>. Second, although economic harm was felt in Illinois, in the present case, the conduct contributing to the injury occurred in Illinois which is distinguishable from <u>Turnock</u>.

CDS's case is analogous to the Seventh Circuit case, <u>FMC</u>, in which the court found that communications to Illinois made through mails, telephone, telex or telecopier in furtherance to defraud an Illinois Corporation is subject to jurisdiction. See <u>FMC Corp</u>, 892 F.2d at 1308. In <u>FMC</u>, the Seventh Circuit ruled economic harm along with the intent to defraud is sufficient for personal jurisdiction. <u>Id.</u> Bell's alleged conduct of sending invoices misrepresenting the actual amount of materials and services to CDS in Illinois with knowledge that the information was misleading along with economic harm is sufficient for personal jurisdiction.

For the foregoing reasons, Defendant's Motion to Dismiss based on lack of personal jurisidction is denied.

## *B. Motion to Transfer*

Bell further moves, in the alternative, to transfer venue in this case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

### *1. Venue*

Venue can be proper in more than one judicial district . See <u>Truserv Corp. v. Neff</u>, 6 F.Supp. 2d 790, 792 (N.D. Ill. June 2, 1998). The venue statute, 28 U.S.C. § 1391 states:

> A civil action wherein jurisdiction is founded solely on diversity of citizenship may

except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

Venue exists in a district if "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. 1391(b)(2). This does not mean, however, that the majority of the events in the instant case must have taken place in Illinois. Truserv Corp. v. Neff, 6 F. Supp. 2d at 792. The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district. Id.

Venue is proper in both the Northern District of Illinois and the Central District of California. Venue is proper in a "judicial district where any defendant resides, if all reside in the same state." 28 U.S.C. § 1391(a)(1). Defendant claims and Plaintiff does not contest that Bell resides in the Central District of California. Therefore venue is proper in the Central District of California. Venue is also proper in the Northern District of Illinois. 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) permits venue based on "a substantial part of the events or omissions giving rise to Plaintiff's claim which occurred" in Illinois. Id. In this case, Defendant argues that the claims against him are based on acts that took place in California and not in Illinois. More specifically, Bell argues that the alleged wrongful act giving rise to the cause of action, performing work for a customer for which he did not properly charge the customer, occurred in California only. However, this court finds that the alleged act is not only the performance of work for which he did not properly charge the customer but also his misrepresentation of these invoices to the corporate headquarters in Chicago, Illinois. Therefore, venue is proper in both

the Northern District of Illinois and the Central District of California.

### *2. Convenience of the Parties and Witnesses*

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a)(2003). Under § 1404, transfer is proper if:(1) venue is proper in both the transferor and transferee court; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. See Boyd v. Snyder, 44 F.Supp. 2d 966, 968 (N.D. Ill. 1999). The moving party bears the burden of demonstrating, "by reference to particular circumstances, that the transferee forum is clearly more convenient." See Heller Financial, Inc. v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1293 (7th Cir. 1989). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986).

The court must consider both the private interest of the parties and the public interest of the court in evaluating the convenience and fairness of the proposed transfer. See Medi USA v. Jobsr Inst. Inc., 791 F. Supp. 208, 210 (N.D. Ill. 1992). Private interests include: (1) plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof in each forum, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses; and (4) convenience to the parties - specifically their respective residences and abilities to bear the expense of trial in a particular forum. See id.; see generally 15 Charles A. Wright, Arthur R. Miller & E. Cooper, Federal Practice and Procedure §§ 3849-53 (1986).

After an analysis of the convenience of the parties and witnesses the court finds that transfer to

the Central District of California is appropriate. First, Plaintiff's determination to file suit in Illinois is not the determinate factor. In certain circumstances, a plaintiff's choice of forum is given substantial weight, but it is usually not a dominant factor, see Medi USA, L.P. 791 F.Supp. at 210, and it is not the only factor a court must consider. See Van Holdt v. Husky Injection Molding Systems, Ltd., 887 F.Supp. 185, 188 (N.D.Ill. 1995).

Second, the situs of material events occurred in California. Bell's alleged wrongful act, using the Company credit card and checks for personal use and invoicing a California client for less than the actual amount required, occurred in California.

Third, the court's power to compel unwilling witnesses to appear in Illinois favors transfer to the Central District of California. Bell argues that most of the non-party witnesses are in California. For example, non-party witnesses include customer, Rick Grover of Anglers Marine, and Bell's girlfriend, Robin Brown, who both reside in California. These key witnesses may be reluctant to travel to the forum thus hindering the court's ability to hear all the relevant information.

Fourth, convenience of the parties and costs of litigation also weigh in favor of transferring. A court will not grant a motion to transfer if it will merely shift the inconvenience from one party to another. See Medi USA, L.P., 791 F.Supp. at 211; see also Central States v. White, No. 99 C 1046, 1999 WL 447059, at *2 (N.D. Ill. June 25, 1999). In a case of this nature there will inevitably be a party who must bear the cost of litigation in a distant forum. See Medi USA, L.O., 791 F.Supp. at 211. Bell is a citizen of California and CDS is an Illinois corporation. Bell has identified fifteen potential witnesses from the Central District of California and seven potential witnesses in Nevada. Most of Bell's witnesses are employees of CDS and may be compensated by the Company for travel pertaining to this litigation. CDS has identified five potential witnesses in Illinois and all the key witnesses are employees of CDS and may

17

be compensated by the Company. CDS argues that in the interest and convenience of the parties, litigation should take place in Illinois because certain documents are at its corporate headquarters in Chicago. We find this argument unpersuasive. Bell has argued that some of the documents that CDS is referring to may also be in the Los Angeles office. If the documents are not found in the Los Angeles office, the documents may be easily sent through the mail. Additionally, Bell is an individual with limited resources and has no alleged connection to the Northern District of Illinois other than he was formerly employed by CDS. CDS, however, is a national corporation with offices in various locations as well as in California. Between the two parties, CDS is better equipped to bear the inconvenience and expense of travel. Therefore, for the convenience of the parties and witnesses, transfer is appropriate.

### 3. *Interest of Justice*

The third element, "the interest of justice," pertains to the "efficient administration of the court system," and is a distinct and "separate component of a § 1404(a) analysis." See Coffey v. Van Dorn Iron Works, 796 F.2d at 220-221 (1986).

An analysis of the "interest of justice" element favors transfer. In a diversity case it is considered advantageous to have a federal judge try a case who is familiar with the applicable state law." Id. At 221. The interest of justice element includes factors such as each forum's relationship to the cause of action, each court's likely access to the sources or proof and other evidence, the district where the litigants are more likely to receive a speedy trial, and each court's familiarity with the applicable law. Id.

In this case, the majority of the conduct giving rise to CDS's claim occurred in California. Furthermore, the majority of non-party witnesses are located in California and documents and evidence that may be presented for trial may be found there or sent from Chicago if the documents are not found in California. Also, the length of time between filing and going to trial is longer in the

Northern District of Illinois than in the Central District of California. The final factor, concerning the court's familiarity with the applicable law must be considered. The Agreements at issue stipulated a choice of law provision as State of California. This court finds in the interest of justice to transfer the case to the forum familiar with the applicable state law.

## IV. CONCLUSION

In conclusion, Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) is denied and Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) is granted.

IT IS SO ORDERED.

CHARLES RONALD NORGLE, Judge
United States District Court

DATED 7-15-04